UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES G. PAULSEN, Regional Director of Region 29 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,<br><br>    Petitioner,<br><br>    v.<br><br>ALL AMERICAN SCHOOL BUS CORP., *et al*.<br><br>    Respondents and Counterclaim/Third-Party Plaintiffs,<br><br>    v.<br><br>JAMES G. PAULSEN, *et al.*,<br><br>    Counterclaim/Third-Party Defendants. | No. 1:13-cv-3762 (KAM)(RER)<br>Judge Kiyo A. Matsumoto |

**COUNTERCLAIM/THIRD PARTY DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

# **TABLE OF CONTENTS**

**Headings**                                                                          **Page(s)**

ARGUMENT ............................................................................................................................. 1

    I. **This Court Lacks Subject-Matter Jurisdiction Under The Mandamus Act** ................ 1

    II. **This Court Lacks Subject-Matter Jurisdiction Under *Leedom v. Kyne*** ...................... 2

        A. <u>The Companies Do Not Lack An Alternative Means Of Obtaining Judicial Review</u> ... 2

        B. <u>The Defendants Have Not Clearly Violated The NLRA Or The Constitution</u> .............. 4

            1. The Board Did Not "Clearly" Lack A Quorum When These Cases Began ............ 4

            2. Laurel Baye Healthcare of Lake Lanier v. NLRB Is Neither Relevant Nor Persuasive ................................................................................................................. 5

            3. The Board Validly Delegated Authority To Initiate This 10(j) Petition To The General Counsel .................................................................................................... 6

            4. Even If Defendant Paulsen Was Invalidly Appointed Regional Director, His Prosecution Of This Case Has Not Violated The NLRA Or Constitution ............. 8

CONCLUSION........................................................................................................................ 10

## ARGUMENT

Contrary to the Companies' strident characterization of this case as "not an ordinary labor case," the underlying facts of this case are routine for cases in which the NLRB seeks preliminary injunctive relief. What is at issue here is little more than a group of employers seeking to escape being called to account for their alleged unfair labor practices. Ultimately, however, this Court simply lacks subject-matter jurisdiction to hear the Companies' claims.

I. **This Court Lacks Subject-Matter Jurisdiction Under The Mandamus Act**

Respondents and Counterclaim/Third-Party Plaintiffs All American School Bus Co., *et al.* (the Companies) hold fast to their assertion that this Court has jurisdiction over their Counterclaim and Third-Party Complaint (the Counterclaim) under the Mandamus Act, 28 U.S.C. § 1361. Memorandum in Opposition ("Opp."), at 6-8. But as Defendants have already shown, the Mandamus Act simply does not apply to this type of case.

As explained in the Counterclaim/Third-Party Defendants' ("Defendants") Memorandum of Points and Authorities ("Mem.") at 9, district courts lack Mandamus Act jurisdiction where review of agency action is committed to the Courts of Appeals. *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 77-79 (D.C. Cir. 1984). The validity of the Consolidated Complaint, as adjudicated by the Board in a final order, may be reviewed by either the Second or D.C. Circuit Courts of Appeals. *See* 29 U.S.C. § 160(f). Thus, those courts are the only courts with subject-matter jurisdiction to issue writs of mandamus in this case.[1]

---

[1] Remarkably, the Companies claim (Opp. at 7) that ordinary judicial review is unavailable because "there was no Board" when the challenged actions were taken. This would no doubt come as a considerable shock to the D.C. Circuit, which experienced no "existential" difficulty in addressing and deciding the *Noel Canning* case based on the order before it. The Companies' claim is simply not an accurate description of how judicial review works under 29 U.S.C. § 160(f). As Defendants have previously explained, Mem. at 7-8, when a court is reviewing a final Board order, "all questions of the jurisdiction of the Board and the regularity of its proceedings and <u>all questions of constitutional right or statutory authority</u> are open to examination by the

1

Moreover, the prosecutorial *decision to issue* the Consolidated Complaint – as contrasted with its *legal validity*, which will be subject to judicial review when there is a final Board Decision – is simply not reviewable at all. *NLRB v. UFCW Local 23*, 484 U.S. 112, 130-133 (1987) (rejecting the notion that General Counsel's exercise of prosecutorial discretion is reviewable in district court). Where a challenged agency action is outside the jurisdiction of the courts, a court may not issue a writ of mandamus against that action in aid of its jurisdiction, for the rather obvious reason that it has no jurisdiction to protect. *FPC v. Metro. Edison Co.*, 304 U.S. 375, 383 (1938) (court could not issue writ of mandamus against FPC's administrative subpoena and notice of hearing, which were unreviewable interlocutory orders). Accordingly, the Mandamus Act does not provide subject-matter jurisdiction in this case.

II. **This Court Lacks Subject-Matter Jurisdiction Under *Leedom v. Kyne***

The Companies also assert that this court has jurisdiction under the standard set forth in *Leedom v. Kyne*, 358 U.S. 184, 188-90 (1958). To successfully invoke *Leedom*, the Companies must show both the absence of an adequate alternative means of judicial review, and a clear violation of the Constitution or the National Labor Relations Act (NLRA) by the Board. The Companies cannot satisfy either of these conjunctive requirements, and accordingly, *Leedom v. Kyne* does not supply subject-matter jurisdiction over the Counterclaim.

---

court." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 49 (1938) (emphasis added) (quoting *NLRB v. Jones & Loughlin Steel Corp.*, 301 U.S. 1, 47 (1937). Board orders are not self-enforcing. If the Court finds that there was "no Board" to issue an order, it will not be enforced, and the party challenging the order need not comply.

2

A. <u>The Companies Do Not Lack An Alternative Means Of Obtaining Judicial Review</u>

*Leedom* jurisdiction attaches only when ordinary judicial review is unavailable. 358 U.S. at 190. Now that there is a fully Senate-confirmed Board in place,[2] such review is indisputably available, and the Companies have every right to avail themselves of it. The Companies reiterate their gripes about the "ruinous cost" of complying with the same rules that apply to every other employer covered by the NLRA (Opp. at 14), but as Defendants have previously explained (Mem. at 11), this is simply an "annoying incident" of life in a regulated world that does not warrant extraordinary relief. *Heller Brothers Co. v. Lind*, 86 F.2d 862, 863-64 (D.C. Cir. 1936) (per curiam); *see also Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50 (1938) (litigation costs do not justify extraordinary relief). Similarly, the Companies' complaints about the "uncertainty" created by the need to defend against a Board proceeding (Opp. at 19) could be made by any respondent in a Board case and do not render ordinary judicial review inadequate.

The Companies also assert that final Board review will be inadequate because "[a]ny new, valid Board cannot retroactively cure the illegitimate actions performed by Defendants." Opp. at 18. They cite no case law for this hyperbolic assertion, nor do they even attempt to distinguish the D.C. Circuit's decisions in *Doolin*, *Sec. Sav. Bank v. Office of Thrift Supervision*, 139 F.3d 203, 213 (D.C. Cir. 1998), and *FEC v. Legi-Tech*, 75 F.3d 704, 709 (D.C. Cir. 1996). *See* Mem. at 13-14. In each of those cases, administrative proceedings were initiated by an agency whose leadership had either been held or assumed *arguendo* to be unlawfully constituted. In each case, the agency was subsequently reconstituted and issued a decision which relied upon its prior investigation, and in each case, the agency's decision was upheld after a court challenge.

---

[2] The new Board Members had all been sworn into office as of August 12, 2013. *See* The National Labor Relations Board Has Five Senate Confirmed Members, http://www.nlrb.gov/news-outreach/news-releases/national-labor-relations-board-has-five-senate-confirmed-members (Aug. 12, 2013).

3

An agency is simply not required to "repeat the entire administrative process" because of a temporary defect in its composition, so long as that defect is subsequently corrected. *Legi-Tech*, 75 F.3d at 708.

Thus, the first two Counts of the Companies' Counterclaim fail to satisfy *Leedom*'s "no adequate judicial remedy" prong, and this court accordingly lacks subject-matter jurisdiction to hear them.

    B.  The Defendants Have Not Clearly Violated The NLRA Or The Constitution

The Companies fare no better on *Leedom*'s second requirement. In opposing this Motion, the Companies allege three theories for how the Defendants' actions in this case violated the NLRA's quorum provision, 29 U.S.C. § 153(b), and the Recess Appointments and Due Process Clauses of the Constitution, U.S. Const. art. II, §3; amend. V. All of these theories rely, as a threshold issue, on the argument that the Board lacked a quorum prior to the Senate's recent confirmations of new members – a proposition which is not only the subject of significant Circuit Court disagreement, but is also currently under Supreme Court review. Thus (virtually by definition) the Companies cannot show a clear violation of anything. And even assuming that the Board did lack a quorum, as shown below, the Companies' theories are independently meritless. Thus, dismissal of the Counterclaim is warranted for failure to satisfy the first prong of *Leedom*.

    1.  The Board Did Not "Clearly" Lack A Quorum When These Cases Began

The Companies at one point accuse the Board of ignoring "the rampaging elephant in the room": the Board's alleged invalidity. (Opp. at 7.) Yet, the Companies themselves "assiduously strain[] to ignore" a fact of critical, if not pachydermal, importance: the validity of the President's recess appointments of Sharon Block and Richard Griffin will be ruled upon in the next Term of the Supreme Court of the United States.

4

The D.C. Circuit itself in *Noel Canning* acknowledged what the Companies are unwilling to admit (Opp. at 17)– that its holdings conflict with those of other Circuit Courts of Appeals, including the Second Circuit. *Noel Canning v. NLRB*, 705 F.3d 490, 505-06, 509-10 (D.C. Cir. 2013), *cert. granted*, 133 S.Ct. 2861, 2861-62 (2013). The Supreme Court granted certiorari on both holdings, and added a third issue which has yet to be squarely resolved by any Circuit Court – "Whether the President's recess-appointment power may be exercised when the Senate is convening every three days in pro forma sessions."[3] It is bizarre for the Companies to assert that the Supreme Court has granted certiorari on issues with "clear" answers (Opp. at 9). This is tantamount to accusing that Court of violating its own guidelines for what makes a case worthy of certiorari. *See* Sup. Ct. R. 10. Defendants submit that, in fact, the Supreme Court has *not* flouted its own rules, and that the question of whether the President's recess appointments of Members Sharon Block and Richard Griffin were valid remains *unclear* – especially in light of the lower courts' disagreements over the two issues upon which they have ruled.[4]

2. Laurel Baye Healthcare of Lake Lanier v. NLRB Is Neither Relevant Nor Persuasive

Even assuming that the Board did "clearly" lack a quorum when these cases were initiated, the Counterclaims would still fail to meet the test of *Leedom v. Kyne* for independent

---

[3] The one appellate judge to have squarely reached this issue has resolved it in the Board's favor. *NLRB v. Enterprise Leasing*, Nos. 12–1514, 12–2000, 12–2065, 2013 WL 3722388, at *61 (4th Cir. July 17, 2013) (Diaz, J., dissenting). To be sure, the majority in that case implied it would reach a different conclusion, *id.* at *47, but the existence of disagreements among circuit judges ipso facto demonstrates that there is no "clear" answer to these questions. *See also NLRB v. New Vista Nursing & Rehab. Ctr.*, 713 F.3d 203, 244 (3d Cir. 2013) (Greenaway, J., dissenting).

[4] The Companies cite to two cases in this Circuit stating cryptically that the Board's decision in *D.R. Horton*, 357 NLRB No. 184, which was issued by a panel including Board Member Craig Becker, "may have been decided . . . without a proper quorum." Opp. at 17., citing *Sutherland v. Ernst & Young LLP*, No. 12–304–cv, 2013 U.S. App. LEXIS 16513 at n.9 (2d Cir. Aug. 9, 2013) and *Dixon v. NBCUniversal Media LLC*, No. 12 Civ. 7646(PAE), 2013 WL 2355521 (S.D.N.Y. May 28, 2013). These hypothetical comments cannot even be called dicta, much less holdings, and certainly the Second Circuit's comment in *Sutherland* is not binding precedent.

5

reasons. The Companies argue (Opp. at 10-11) that the Board's delegations of authority to its subordinates lapsed when the Board allegedly lost a quorum, citing *Laurel Baye Healthcare of Lake Lanier v. NLRB*, 564 F.3d 469, 475 (D.C. Cir. 2009). *Laurel Baye*, however, is irrelevant to the General Counsel's power to prosecute the Consolidated Complaint. As previously explained, Mem. at 12-14, the prosecution of unfair labor practices is a power which Congress has assigned to the General Counsel, not the Board. The Labor-Management Relations Act of 1947 intentionally created the General Counsel as an independent prosecutor, depriving the Board of the power to act as both prosecutor and adjudicator in the same administrative proceeding. In issuing and prosecuting complaints, the General Counsel and his staff do not act as agents of the Board, but as party litigants before it.

 Moreover, even assuming that *Laurel Baye* is relevant, it has no persuasive value. The Companies utterly fail to grapple with the decisions of the Fifth, Eighth, and Ninth Circuits, all of which have declined to follow *Laurel Baye*'s "lapse" holding. *See Frankl v. HTH Corp.*, 650 F.3d 1334, 1354 (9th Cir. 2011); *Overstreet v. El Paso Disposal, LP*, 625 F.3d 844, 853 (5th Cir. 2010); *Osthus v. Whitesell Corp.*, 639 F.3d 841, 844 (8th Cir. 2011).[5] So, too, did Judge Cogan of this District reject *Laurel Baye*'s holding in his exhaustive and well-reasoned opinion in *Paulsen v. Renaissance Equity Holdings*, 849 F.Supp.2d 335, 348-50 (E.D.N.Y. 2012). In the face of this overwhelming rejection, it is patently erroneous to assert that *Laurel Baye* provides any grounds to find that Defendants have "clearly" violated the NLRA or Constitution.

---

[5] The only one of these cases that the Companies even attempt to distinguish is *HTH Corp.* (Opp. at 15.) The Companies assert facts irrelevant to the delegation "lapse" argument and do not explain why the Ninth Circuit's holding – which squarely rejects *Laurel Baye* and concludes that Board delegations to the General Counsel survive the Board's loss of a quorum – should not be followed.

6

    3. The Board Validly Delegated Authority To Initiate This 10(j) Petition To The General Counsel

Second, the Companies assert (Opp. at 11-13) that the filing and prosecution of this 10(j) case violates the NLRA because Defendant Paulsen lacked authority to file it. At the outset, Defendants reiterate their objection (Mem. at 5-6) to the Companies' attempt to inject this issue into the case via the improper vehicle of a Counterclaim for injunctive and declaratory relief. This issue should have been raised either as an affirmative defense to the 10(j) petition, or by a F.R.C.P. 12(b)(6) motion to dismiss the petition for failure to state a viable claim for relief.

In any event, the 10(j) petition was properly authorized. Even if it were established that the *Board*'s April 3, 2013 authorization to file the 10(j) petition was invalid, the petition was separately authorized by the Acting General Counsel, also on April 3, 2013, under three overlapping delegations of litigation authority that are effective in the event the Board lacks a quorum. *See* Order Delegating Authority to the General Counsel, 66 Fed. Reg. 65,998 (Dec. 21, 2001); Order Delegating Authority to the General Counsel, 67 Fed. Reg. 70,628 (Nov. 25, 2002); Order Contingently Delegating Authority to the General Counsel, 76 Fed. Reg. 69,768 (Nov. 9, 2011). Consequently, either the Board's or the Acting General Counsel's authorization "must have been valid regardless of whether the President's appointments to the Board were constitutional." *Renaissance Equity Holdings,* 849 F. Supp. 2d at 351. *See also Garcia v. S & F Market St. Healthcare, LLC*, 2012 WL 1322888, at *2 n.1 (C.D. Cal. Apr. 17, 2012); *Overstreet v. SFTC, LLC,* -- F. Supp. 2d --, 2013 WL 1909154, at *3 (D.N.M. May 9, 2013).

The Acting General Counsel authorized this injunction petition under powers delegated by the Board in 2001, 2002, and 2011. In 2001, the Board delegated to the General Counsel, among other things, "full and final authority and responsibility on behalf of the Board to initiate and prosecute injunction proceedings under section 10(j)" during "any period when the Board

7

lacks a quorum." 66 Fed. Reg. 65,998 (Dec. 21, 2001). In 2002, the Board reaffirmed this delegation. The 2002 order was issued by Members Wilma Liebman, serving a term appointment, and William Cowen and Michael Bartlett, each serving intersession recess appointments. *See* Henry B. Hogue, *Recess Appointments Made by President George W. Bush, January 20, 2001-October 31, 2008* 11 (Cong. Research Serv. 2008), available at http://www.fas.org/sgp/crs/misc/RL33310.pdf (last visited Aug. 16, 2013). As intersession recess appointments, Member Cowen's and Member Bartlett's appointments were valid even under the disputed "intrasession" holding of *Noel Canning* and its progeny.[6] The 2011 order which the Companies attack was little more than a belt-and-suspenders reaffirmation of the 2001 and 2002 delegations, which delegate authority to initiate 10(j) proceedings to the General Counsel at any time when the Board lacks a quorum. *See Overstreet v. SFTC, LLC*, -- F. Supp. 2d --, No. 13-CV-0165 RB/LFG, 2013 WL 1909154, at *3-*5 (D.N.M. May 9, 2013).[7]

The Acting General Counsel's authorization thus is valid and would remain so even if the Board lost a quorum, and Respondent therefore cannot prevail on its contention that this proceeding is invalidly authorized. Indeed, the vast majority of courts to consider this issue have relied upon the Board's delegation and the Acting General Counsel's delegated authority in rejecting nearly identical challenges to Section 10(j) petitions. *See* Memorandum and Order, *Paulsen v. Remington Lodging & Hospitality*, No. 2:13-cv-02539-JFB-WDW, Dkt. No. 29, at 8-9 (E.D.N.Y. Aug. 14, 2013); *Rubin v. Hospital of Barstow, Inc.*, No. ED CV 13-933 CAS

---

[6] *Noel Canning*'s second holding, invalidating recess appointments where the vacancy did not first arise during the recess, is, by the D.C. Circuit's own admission, contrary to Second Circuit precedent. *Noel Canning*, 705 F.3d at 509-10 (citing *United States v. Allocco*, 305 F.2d 704, 709-15 (2d Cir. 1962).

[7] For this reason, this Court need not reach the Companies' claim (Opp. at 12) that former NLRB Member Becker, a member of the Board that issued the 2011 delegation, was himself improperly appointed.

8

(DTBx), 2013 WL 3946543, at *5 (C.D. Cal. July 29, 2013); *SFTC,* 2013 WL 1909154 at 3-6; *Kreisberg v. Healthbridge Mgmt.*, 2012 WL 6553103 at *5 n.9 (D. Conn. Dec. 14, 2012); *Calatrello v. JAG Healthcare*, 2012 WL 4919808, at *3 (N.D. Ohio Oct. 16, 2012); *Renaissance Equity Holdings*, 849 F. Supp. 2d at 350-51; *Fernbach v. 3815 9th Ave. Meat and Produce*, 2012 WL 992107 (S.D.N.Y. Mar. 21, 2012); *Gottschalk v. Piggly Wiggly*, 861 F. Supp. 2d 962, 964-65 (E.D.Wis. 2012); *Garcia*, 2012 WL 1322888, at*2 n.1. Note that, contrary to the Companies' insinuation that *Noel Canning* changed the legal landscape, Opp. at 15, several of these decisions have issued since the D.C. Circuit's decision, and none have found it controlling on this issue.

Accordingly, the Acting General Counsel's authorization of injunction proceedings in this case did not violate the NLRA (or the Constitution), even assuming the absence of a Board quorum at the time Section 10(j) relief was authorized.

    4. Even If Defendant Paulsen Was Invalidly Appointed Regional Director, His Prosecution Of This Case Has Not Violated The NLRA Or Constitution

The final argument the Companies raise to claim that the Defendants have violated the NLRA (Opp. at 13-14) is that Defendant Paulsen was "invalidly appointed" under the Board's regulations and that his prosecution of the Consolidated Complaint and 10(j) petition has been unlawful. But even assuming *arguendo* that he was invalidly appointed, there is no "clear violation" of the NLRA, because his allegedly unlawful decisions were authorized or ratified by the Acting General Counsel himself. The NLRB's decision to seek 10(j) relief has already been discussed above. As for the Consolidated Complaint, its issuance and prosecution were expressly ratified by the Acting General Counsel on July 12, 2013. Decl. of Paulsen, attached to Motion to Dismiss, at ¶7, Exhibit 5. Because there is no statute of limitations on the filing of an unfair labor

9

practice complaint,[8] the Acting General Counsel was "able not merely to do the act ratified at the time the act was done, but also at the time the ratification was made." *Doolin*, 139 F.3d at 212 (quoting *FEC v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994)).[9]

Thus, every one of the Companies' arguments as to how the Board has violated the NLRA or Constitution fails. Defendants' Motion to Dismiss Counterclaim Counts One and Two should be granted for failure to satisfy this prong of *Leedom*.[10]

## CONCLUSION

The Companies simply fail to meet the requirements to invoke extraordinary district court subject-matter jurisdiction under the Mandamus Act and *Leedom v. Kyne*. The Mandamus Act is inapplicable to NLRB unfair labor practice proceedings, which undergo review in the Courts of Appeals. As for *Leedom*, the Companies cannot show that they meet either prong of its test. They have not demonstrated that the ordinary course of judicial review is inadequate, and they cannot show a clear violation of the NLRA or Constitution. In light of the foregoing, the first two counts of the Counterclaim should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

---

[8] The National Labor Relations Act's statute of limitations provision, 29 U.S.C. § 160(b), imposes a six-month deadline upon the filing of unfair labor practice charges by private parties, but no limitation upon the filing of a complaint alleging that such charges are meritorious.

[9] Contrary to the Companies' suggestion (Opp. at 14), nothing in 29 C.F.R. § 102.15 suggests that Regional Directors hold *exclusive* authority to issue complaints – nor could it, because "final authority" to issue or refuse to issue complaints is expressly committed to the General Counsel by 29 U.S.C. § 153(d).

[10] In Section D of their Opposition, the Companies claim a laundry list of factual distinctions between various cases cited in the Motion to Dismiss and this case. While it is true that those cases are not perfectly on all fours with the precise facts of this case (a standard which would make it nearly impossible to cite any legal authority), those factual differences are irrelevant. The legal principles announced in those cases are persuasive authority weighing against the Companies' arguments.

Respectfully submitted,

ABBY PROPIS SIMMS
*Assistant General Counsel*
(202) 273-2934
Abby.Simms@nlrb.gov

NANCY E. KESSLER PLATT
*Supervisory Attorney*
(202) 273-2937
Nancy.Platt@nlrb.gov

/s/ Paul Thomas
PAUL A. THOMAS
*Attorney*
(202) 273-3788
Paul.Thomas@nlrb.gov

National Labor Relations Board
Contempt, Compliance, and Special
Litigation Branch
1099 14th Street, NW, Suite 8600
Washington, DC 20570

Attorneys for Counterclaim/Third-Party Defendants James Paulsen, Lafe Solomon, Richard Griffin Jr., and Sharon Block, in their official capacities

Dated: August 16, 2013

11