UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

*********************************************

JAMES G. PAULSEN, Regional Director of Region 29 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD
       Petitioner

v.

ALL AMERICAN SCHOOL BUS CORP., ANJ SERVICE, INC., ATLANTIC QUEENS BUS CORP., BOBBY'S BUS CO. INC., BORO TRANSIT, INC., B-ALERT INC., ATLANTIC ESCORTS INC., CITY WIDE TRANSIT, INC., CANAL ESCORTS, INC., CIFRA ESCORTS, INC., EMPIRE STATE ESCORTS, INC., GOTHAM BUS CO. INC., GRANDPA'S BUS CO., INC., HOYT TRANSPORTATION CORP., IC ESCORTS, INC., KINGS MATRON CORP., LOGAN TRANSPORTATION SYSTEMS, INC., LONERO TRANSIT INC., LORISSA BUS SERVICE INC., MOUNTAINSIDE TRANSPORTATION CO., INC., PIONEER SCHOOL BUS RENTAL, INC., PIONEER TRANSPORTATION CORP., RAINBOW TRANSIT INC., AMBOY BUS CO., INC., RELIANT TRANSPORTATION, INC., RPM SYSTEMS INC., SCHOOL DAYS INC. and TUFARO TRANSIT CO. INC.
       Respondents

13-CV-3762 (KAM)

*********************************************

**PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENTS' MOTION FOR A STAY PENDING APPEAL**

# TABLE OF CONTENTS

I. STATEMENT OF THE CASE ................................................................................................5

II. ARGUMENT ..........................................................................................................................5

    A. RESPONDENTS DO NOT HAVE A STRONG LIKELIHOOD OF PREVAILING ON APPEAL.......6
        1. *The Court Correctly Concluded that the Petitioner Has Authority to Seek Section 10(j) Relief Under Authority Delegated by the Board to the Acting General Counsel*........6
        2. *The Court Correctly Concluded that the Consolidated Complaint was Validly Issued* 9
        3. *The Court Properly Relied on Facts Regarding the Negotiations over the 2009-2012 Collective Bargaining Agreement in Finding Reasonable Cause*........................................10
    B. RESPONDENTS DID NOT SHOW THAT THEY WOULD SUFFER IRREPARABLE INJURY IF THE STAY IS DENIED, THAT THE UNION WILL NOT BE SUBSTANTIALLY HARMED IF THE STAY IS GRANTED, AND THE STAY WILL SERVE THE PUBLIC INTEREST ................................10
        1. *Respondents Did Not Show that They Would Suffer Irreparable Injury If the Stay is Denied* ........................................................................................................................................10
        2. *Respondents Did Not Show that the Union Will Not be Substantially Harmed If the Stay is Granted*.........................................................................................................................12
        3. *Respondents Did Not Show that a Stay Will Serve the Public Interest*......................13

III. CONCLUSION ....................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**
*Allstate v. Serio*, 261 F.3d 143, 149-50 (2d Cir. 2001) .................................................. 8
*Cooper v. Town of East Hampton*, 83 F.3d 31, 36, (2d Cir. 1996) ................................. 6
*Doolin Sec. Sav. Bank v. Office of Thrift Supervision*, 139 F.3d 203, 212-14 (D.C. Cir. 1998) ..... 9
*Escambia County v. McMillan*, 466 U.S. 48, 51 (1984) ................................................. 8
*FEC v. Legi-Tech, Inc.*, 75 F.3d 704, 708 (D.C. Cir. 1996) ............................................ 9
*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) ............................................................. 6
*Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993) ....................................... 5
*Hooks v. Kitsap Tenant Support Servs.*, 2013 WL 4094344 (W.D. Wash. Aug. 13, 2013) ......... 8
*Jung Sun Laundry Group Corp.*, Case No. 10-cv-2975, 2010 U.S. Dist. LEXIS 120565 (E.D.N.Y. Nov. 15, 2010) ............................................................................ 13
*Kaynard v. Mego Corp.*, 633 F.2d 1026, 1030 (2d Cir. 1980) ........................................ 6
*Kreisberg v. Healthbridge Management*, 2012 WL 6553103 (2d Cir. 2013), 133 S.Ct. 1002 (2013) .................................................................................................... 9, 12
*New Vista Nursing & Rehab.*, 719 F.3d 203 (3rd Cir. May 16, 2013) ............................ 6
*Nken v. Holder*, 556 U.S. 418, 434 (2009) ..................................................................... 5
*NLRB v. Enterprise Leasing Co., Southeast LLC*, _ F.3d _, 2013 U.S. App LEXIS 14444 .......... 6
*NLRB v. Truitt Mfg., Co.*, 351 U.S. 149 (1956) ............................................................ 11
*NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 127-28 (1987) .... 9
*Noel Canning v. NLRB*, 705 F.3d 490 (D.C.Cir. 2013) ............................................... 6, 8
*Overstreet v. Santa Fe Tortilla Company*, No. 13-cv-0165, 2013 WL 19091954 at *4-5 (D.N.M. May 9, 2013) ........................................................................................... 8
*Paulsen v. Renaissance Equity Holdings, LLC*, 849 F. Supp. 2d 335 (E.D.N.Y. 2012) ..... 6, 11, 12, 13
*Silverman v. Major League Baseball Player Relations Comm., Inc.*, 67 F.3d 1054, 1059 (2d Cir. 1995) ................................................................................................ 10
*Silverman v. MLB Player Relations Comm., Inc.*, 880 F.Supp. 246, 259 (S.D.N.Y.1995) ...... 12
*Socialist Workers Party v. Attorney General of U.S.*, 419 U.S. 1314, 1315 (1974) ............ 5
*Tolbert v. Queens College*, 242 F.3d 58, 75 (2d Cir. 2001) ............................................ 8
*U.S. v. Allocco*, 305 F.2d 704, 709-715 (2d Cir. 1962) ................................................... 7

**Statutes**
29 U.S.C. Sec. 160(j) ......................................................................................................... 5
Federal Vacancies Reform Act, 5 U.S.C. § 3345 ............................................................... 8

**Other Authorities**
Letter from Lafe E. Solomon to Peter Kirsanow of July 12, 2013, at 3 .............................. 9
National Labor Relations Board, *Members of the NLRB Since 1935*, http://www.nlrb.gov/members-nlrb-1935 ............................................................... 7
*Order Contingently Delegating Authority to the General Counsel*, 76 Fed. Reg. 69768-02 (Nov. 9, 2011) ................................................................................................... 8
*Order Delegating Authority to the General Counsel; Before Chairman Peter J. Hurtgen, and Members Wilma B. Liebman and Dennis P. Walsh*, 66 Fed. Reg. 65998-02 (Dec. 14, 2001) .... 7

*Order Delegating Authority to the General Counsel; Before Members Wilma B. Liebman, William B. Cowen, and Michael J. Bartlett*, 67 Fed. Reg. 70628-01 (Nov. 19, 2002) ............... 7

## I. STATEMENT OF THE CASE

This proceeding is before the Court on a Petition for Preliminary Injunction under Section 10(j) of the National Labor Relations Act, as amended (61 Stat. 149, 73 Stat. 544, 29 U.S.C. Sec. 160(j)), herein called the Act, filed on July 3, 2013, by the Regional Director of Region 29 of the National Labor Relations Board, herein called the Board or the Petitioner. On August 28, 2013, the Court entered an order issuing an injunction in favor of the Petitioner, herein called the Order. On August 29, 2013, All American School Bus Corp., et al.,[1] herein called the Respondents, filed an appeal of the Order; and on September 4, 2013, Respondents filed a Motion for a Stay Pending Appeal, herein called the Motion, seeking a stay of the portion of the Order which directs Respondents to restore to Respondents' bargaining unit employees the terms and conditions of employment which existed prior to the Respondents' declaration of a negotiating impasse and implementation of their Best and Final Offer, herein called BFO.

## II. ARGUMENT

Petitioner opposes Respondents' Motion. Respondents fail to meet the requirements for a stay pending appeal and therefore the Court should deny Respondents' motion. A stay of an injunction pending appeal is extraordinary relief, *Socialist Workers Party v. Attorney General of U.S.*, 419 U.S. 1314, 1315 (1974), and is not a matter of right, "even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 434 (2009). *See also Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993). To obtain a stay of the injunction pending appeal,

---

[1] All American School Bus Corp.; ANJ Service, Inc.; Atlantic Queens Bus Corp.; Bobby's Bus Co. Inc.; Boro Transit, Inc.; B-Alert Inc.; Atlantic Escorts Inc.; City Wide Transit, Inc., Canal Escorts, Inc.; CIFRA Escorts, Inc.; Empire State Escorts, Inc.; Gotham Bus Co. Inc.; Grandpa's Bus Co., Inc.; Hoyt Transportation Corp.; IC Escorts, Inc.; Kings Matron Corp.; Logan Transportation Systems, Inc.; Lonero Transit Inc.; Lorissa Bus Service Inc.; Mountainside Transportation Co., Inc.; Pioneer School Bus Rental, Inc.; Pioneer Transportation Corp.; Rainbow Transit Inc.; Amboy Bus Co., Inc.; Reliant Transportation, Inc.; RPM Systems Inc.; School Days Inc. and Tufaro Transit Co. Inc.

5

Respondents must show: (1) a strong likelihood that they will prevail on the merits of its appeal; (2) that they will suffer irreparable injury if the stay is denied; (3) that the other party will not be substantially harmed if the stay is granted; and (4) that the stay will serve the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). *See also Cooper v. Town of East Hampton*, 83 F.3d 31, 36, (2d Cir. 1996). Respondents have not met any of the above elements, and therefore their Motion should be denied.

### A. Respondents Do Not Have a Strong Likelihood of Prevailing on Appeal

To prevail on appeal, Respondents must show that the Court clearly erred in its factual findings, erred on issues of law, or abused its discretion in concluding that injunctive relief is just and proper. *Kaynard v. Mego Corp.*, 633 F.2d 1026, 1030 (2d Cir. 1980). Respondents fail to meet this test.

#### 1. The Court Correctly Concluded that the Petitioner Has Authority to Seek Section 10(j) Relief Under Authority Delegated by the Board to the Acting General Counsel

Respondents argue that the Court clearly erred in finding that the Acting General Counsel, herein called the AGC, had the authority to petition the Court by relying on *Paulsen v. Renaissance Equity Holdings, LLC*, 849 F. Supp. 2d 335 (E.D.N.Y. 2012) since Judge Cogan did not reach the issue of whether the November 9, 2011 delegation of Section 10(j) authority by the Board was valid because the decision issued prior to *Noel Canning v. NLRB*, 705 F.3d 490 (D.C.Cir. 2013), *New Vista Nursing & Rehab.*, 719 F.3d 203 (3rd Cir. May 16, 2013) and *NLRB v. Enterprise Leasing Co., Southeast LLC*, _ F.3d _, 2013 U.S. App LEXIS 14444.

Respondents' argument that the November 9, 2011 delegation was invalid is unavailing, because even if the 2011 delegation were invalid, the AGC had Section 10(j) authority pursuant

to overlapping delegations made in 2001 and 2002, as discussed in the *Board's Reply in Support of Motion to Dismiss Counterclaim.* ECF No. 56-7, 7-8, August 16, 2013.

In 2001, the Board issued an order "delegat[ing] to the General Counsel full and final authority and responsibility on behalf of the Board to initiate and prosecute injunction proceedings under section 10(j)," stating that it "shall be effective during any time at which the Board as fewer than three Members . . ." and "shall be revoked whenever the Board has at least three Members." *Order Delegating Authority to the General Counsel; Before Chairman Peter J. Hurtgen, and Members Wilma B. Liebman and Dennis P. Walsh*, 66 Fed. Reg. 65998-02 (Dec. 14, 2001).

In 2002, the Board issued a reaffirmation of the 2001 delegation order. This 2002 order reaffirmed that "[a]ll existing delegations of authority to the General Counsel and to staff in effect prior to the date of this order remain in full force and effect, including the December 14, 2001, delegation regarding court litigation authority . . . ." *Order Delegating Authority to the General Counsel; Before Members Wilma B. Liebman, William B. Cowen, and Michael J. Bartlett*, 67 Fed. Reg. 70628-01 (Nov. 19, 2002). When the 2002 delegation order issued, Member Liebman was serving a term appointment, and Members William Cowen and Michael Bartlett were each serving intersession recess appointments. *See* National Labor Relations Board, *Members of the NLRB Since 1935*, http://www.nlrb.gov/members-nlrb-1935. Therefore, the 2002 delegation order was made by a quorum of Board members whose appointments are valid under Second Circuit precedent, *see U.S. v. Allocco*, 305 F.2d 704, 709-715 (2d Cir. 1962), and who are not implicated by the Respondents' constitutional arguments. This delegation of Section 10(j) authority has never been revoked (except by its terms during periods in which the Board has a quorum), and has continued to be in effect during any time at which the Board has

fewer than three members. Indeed, in the 2011 delegation, the Board expressly reaffirmed all of its previous delegations of authority, including the 2001 and 2002 orders. *Order Contingently Delegating Authority to the General Counsel*, 76 Fed. Reg. 69768-02 (Nov. 9, 2011). The United States District Court for the District of New Mexico recently addressed the legal effect of the purported invalidity of the 2011 delegation. *See Overstreet v. Santa Fe Tortilla Company*, No. 13-cv-0165, 2013 WL 19091954 at *4-5 (D.N.M. May 9, 2013) ("SFTC"). *SFTC* held that even if the 2011 delegation is presumed invalid, the prior delegations remain in effect and provide the AGC with authority to initiate a 10(j) petition. Therefore, even if the 2011 delegation were invalid due to lack of Board quorum when it issued, the 2002 delegation, made by a quorum that was valid under Second Circuit precedent, provided the AGC with authority to initiate this injunction proceeding under Section 10(j).[2]

Given that the Board validly delegated its authority to seek Section 10(j) relief to the General Counsel as discussed above, the Court need not rule on Respondents' constitutional argument regarding *Noel Canning*. *See Escambia County v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam) ("the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case"); *Allstate v. Serio*, 261 F.3d 143, 149-50 (2d Cir. 2001).

---

[2] If the Court were to construe Respondents' notice of supplemental authority as a belated attempt to attack Lafe E. Solomon's designation as AGC under *Hooks v. Kitsap Tenant Support Servs.*, 2013 WL 4094344 (W.D. Wash. Aug. 13, 2013), it should reject that argument as grounds for a stay. As an initial matter, Respondents do not purport to rely on that argument in their Motion, nor could they, as they have waived any challenge to the AGC's designation. *See Tolbert v. Queens College*, 242 F.3d 58, 75 (2d Cir. 2001) (issues raised "in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). In any event, the *Hooks* court's cursory ruling that the AGC's designation violated the terms of the Federal Vacancies Reform Act, 5 U.S.C. § 3345, is incorrect on its merits. With minimal analysis, *Hooks* concluded that the AGC's appointment violated the FVRA because the AGC had never served as a first assistant to the departing officer. But the limitation concerning service as a first assistant that appears in § 3345(b)(1)(A) of the FVRA applies only to appointments made pursuant to § 3345(a)(1). *See, e.g.*, Cong. Rec., 105th Cong., 2nd sess. (Oct. 21, 1998) at p. 27496 ("Under § 3345(b)(1), the revised reference to § 3345(a)(1) means that this subsection applies only when the acting officer is the first assistant, and not when the acting officer is designated by the President pursuant to §§ 3345(a)(2) or 3345(a)(3)."). The AGC is serving under a designation made pursuant to § 3345(a)(3). Accordingly, the limitations applied by the *Hooks* court do not apply to the AGC.

Therefore, Respondents' challenges to the Board's and the AGC's authority to seek Section 10(j) relief do not provide a basis for staying the injunction. The inappropriateness of a stay is most clearly supported by the Supreme Court's and the Second Circuit's denial of stays requested in a nearly identical context. *See Kreisberg v. Healthbridge Management*, 2012 WL 6553103 (2d Cir. 2013), 133 S.Ct. 1002 (2013). In that case, both courts denied the motions to stay, and allowed the Section 10(j) injunction to remain in effect, despite the respondent there making similar arguments about the Board's recess appointments to those made by Respondents here.

### 2. The Court Correctly Concluded that the Consolidated Complaint was Validly Issued

Respondents argue that the Regional Director of Region 29 of the Board did not have the authority to issue the underlying Consolidated Complaint. First, as discussed previously in the *Board's Reply in Support of Motion to Dismiss Counterclaim*, ECF No. 56-7, 4-5, August 16, 2013, neither the Second Circuit nor the Supreme Court has held that the Board that appointed the Regional Director was invalid.[3] Second, on July 12, 2013, the AGC ratified the issuance of the Consolidated Complaint, and thus cured any conceivable defect in its issuance. Letter from Lafe E. Solomon to Peter Kirsanow of July 12, 2013, at 3. *See Doolin Sec. Sav. Bank v. Office of Thrift Supervision*, 139 F.3d 203, 212-14 (D.C. Cir. 1998); *FEC v. Legi-Tech, Inc.*, 75 F.3d 704, 708 (D.C. Cir. 1996). In any event, the Act grants "final authority" to issue complaints to the General Counsel. 29 U.S.C. § 153(d); *NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 127-28 (1987).

---

[3] Regional Director James G. Paulsen was appointed by the Board and the AGC on December 28, 2011, not on January 6, 2012, as Respondents asserted. ECF No. 65, *Memorandum of Law in Support of Respondents' Motion for a Stay Pending Appeal*, September 4, 2013.

### 3. The Court Properly Relied on Facts Regarding the Negotiations over the 2009-2012 Collective Bargaining Agreement in Finding Reasonable Cause

Respondents argue that the facts regarding the bargaining sessions for the 2009-2012 collective bargaining agreement, herein called CBA, between Respondents and Local 1181-1061, Amalgamated Transit Union, herein called the Union, were excluded by Judge Green and that an evidentiary hearing on this matter should be held. In its ruling, the Court properly considered the facts in evidence in the administrative hearing and Respondents' supplemental submission to the Court of bargaining notes and a declaration. Respondents complain that they were not able to introduce documentary evidence and testimony during the hearing, but admit that they submitted the aforementioned bargaining notes and testimony to the Court after Judge Green excluded it from the administrative hearing. It is disingenuous after such submissions, which the Court considered, to claim that the Court had an incomplete factual record. Furthermore, under the reasonable cause standard for issuance of a Section 10(j) injunction, "appropriate deference" should be given to the contentions of the Board. *Silverman v. Major League Baseball Player Relations Comm., Inc.*, 67 F.3d 1054, 1059 (2d Cir. 1995). Therefore, Respondents failed to show that the Court clearly erred in considering the facts or applying the law and their request for yet another evidentiary hearing on this matter should be denied.

### B. Respondents Did Not Show that They Would Suffer Irreparable Injury If the Stay is Denied, that the Union Will Not be Substantially Harmed If the Stay is Granted, and the Stay Will Serve the Public Interest

#### 1. Respondents Did Not Show that They Would Suffer Irreparable Injury If the Stay is Denied

Respondents claim that they are already suffering irreparable injury "as a result of the Court's Order," and will continue to do so if it is not stayed. However, there is no evidence the Respondents have yet complied with the portion of the Court's Order regarding restoration of the

terms and conditions. Rather, Respondents cite to financial difficulties of four of the twenty-eight Respondents, which is unsubstantiated before this Court, and a failure to win bids, both of which occurred prior to this Court's Order. Respondents argue that restoration of the prior terms and conditions would be a "death sentence" to many, if not all, of the Respondents. However, it provided no evidence to support this bald claim.

If Respondents are unable to pay the prior terms and conditions under the expired CBA, their legal solution is found at the bargaining table where Respondent can claim an inability to pay and provide documentation so that the Union may verify that claim. *NLRB v. Truitt Mfg., Co.*, 351 U.S. 149 (1956). There is no evidence in the record that Respondents ever did so. If Respondents are having difficulty winning bids, this is also a problem to solve with the Union at the bargaining table. Therefore, Respondents can avoid any harm in following the Court's Order if they immediately restore terms and conditions, return to the table, claim an inability to pay, and bargain in good faith after doing so. Finally, Respondents, after returning to the table, can bargain to a lawful impasse, at which time it may implement its BFO. However, a legal impasse must be reached first.

Respondents cite to *Renaissance*, in which Judge Cogan did not reinstate the pre-existing wage rates because of the employer's claim of inability to pay. *Renaissance* is distinguishable from the instant case because, in *Renaissance*, there was no dispute that the employer claimed an inability to pay at the bargaining table. 849 F. Supp. 2d at 356. In the instant case, there is no evidence in the record to show that Respondents claimed an inability to pay at the bargaining table, and it has yet to produce any evidence to the Court to support its claim. Furthermore, although the extent of the information provided was at issue, the employer in *Renaissance* opened its books to the Union and some evidence of its losses was in the record. *Id.* at 356, 360.

Here, Respondents only presented limited financial reviews of five of the 28 Respondents. (Tr. at 153-54, 172.)[4] Given the above, Respondents did not present sufficient evidence that they would face irreparable harm if the stay is not granted. *See, e.g., Kreisberg v. Healthbridge Management*, 2012 WL 6553103 (2d Cir. 2013), 133 S.Ct. 1002 (2013) (denying motions for stay in the face of similar assertions of financial harms).

### 2. Respondents Did Not Show that the Union Will Not be Substantially Harmed If the Stay is Granted

In arguing that the Union will not be substantially harmed if the stay is granted, Respondents cite to decisions almost exclusively in other circuits, which have no precedential value to this Court. The only case in this circuit to which they cite is *Renaissance*, but utilize it for the proposition that Judge Cogan did not enjoin the employer from using subcontractors to perform special projects "because there was no irreparable harm even if the subcontracting reduced the amount of overtime available to bargaining unit employees." ECF No. 65, *Memorandum of Law in Support of Respondents' Motion for a Stay Pending Appeal*, September 4, 2013. This, however, is an inaccurate characterization of the case; rather, Judge Cogan found:

> With respect to subcontracting, petitioner argues that an injunction is "just and proper" in order to "restore[ ] the lawful bargaining power between the parties." It is true that an injunction can sometimes be warranted in order to allow the parties to "salvage some of the important bargaining equality that existed before the ... unfair labor practices were committed." *Silverman v. MLB Player Relations Comm., Inc.,* 880 F.Supp. 246, 259 (S.D.N.Y.1995). But an injunction forcing Renaissance to reinstate the employees will already have achieved this goal. Even if Renaissance's subcontracting of the work associated with the mass dismissal requests has caused the employees to suffer diminished opportunities for overtime work, petitioner does not assert that this loss of overtime has created any risk of irreparable harm to the employees. A preliminary injunction barring this practice is therefore not warranted at this time.

---

[4] "Tr. at" denotes references to the transcript of the administrative hearing before Judge Green.

*Renaissance*, 849 F. Supp. 2d at 360-61. Judge Cogan did not find that there was no irreparable harm; rather, he found that the petitioner did not assert such harm. Thus, Respondents' cite to *Renaissance* has no bearing on the instant case.

Respondents also attempt to distinguish *Jung Sun Laundry Group Corp.*, Case No. 10-cv-2975, 2010 U.S. Dist. LEXIS 120565 (E.D.N.Y. Nov. 15, 2010), by arguing that relief was necessary in that case because employees lost their health insurance due to their unlawful terminations. Respondents argue that the employees at issue here still have their health insurance. However, the Court cites to *Jung Sun* for the proposition that the employees had difficulty paying rent and medical bills, that no future administrative order could remedy that problem, and that this sort of financial and emotional hardship resulted in antagonism toward the Union. Similarly, in the instant case, employees testified to similar emotional and financial hardships which would lead, predictably, to antagonism toward the Union, which no future administrative order could remedy. Therefore, Respondents' citation to *Jung Sun* is unavailing. Given that Respondents provided no other evidence that the Union will not be substantially harmed if the stay is granted, Respondents did not meet their burden.

### 3. Respondents Did Not Show that a Stay Will Serve the Public Interest

In an attempt to impress upon the court the injunction's alleged harm to the public interest, Respondents undermine their claim of a financial inability to restore employees' terms and conditions by admitting that the New York City Department of Education (DOE) pays for all costs associated with employing the escorts plus a small administrative fee. However, given the likelihood of success on its merits in the instant underlying administrative case, there is very little risk that the DOE will need to overpay escorts. If Respondents have such concerns, then it

is in their power to return to the bargaining table, bargain in good faith and reach an agreement or a lawful impasse.

## III. CONCLUSION

Given the foregoing reasons, the Court should not stay the Order pending appeal.

Dated at Brooklyn, New York, September 11, 2013.

Respectfully submitted,

_____
Annie Hsu, Counsel for Petitioner

_____
Erin Schaefer, Counsel for Petitioner
National Labor Relations Board, Region 29
Two MetroTech Center, Suite 5100
Brooklyn, New York 11201