```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JAMES G. PAULSEN, Regional Director
Of Region 29 of the National Labor
Relations Board, for and on behalf of
The NATIONAL LABOR RELATIONS BOARD

                Petitioner,
                                              MEMORANDUM & ORDER

        -against-                             13-CV-3762 (KAM)


ALL AMERICAN SCHOOL BUS CORP.,
ANJ SERVICE, INC., ATLANTIC QUEENS
BUS CORP., BOBBY'S BUS CO. INC.,
BORO TRANSIT, INC., B-ALERT INC.,
ATLANTIC ESCORTS INC., CITY WIDE
TRANSIT, INC., CANAL ESCORTS, INC.,
CIFRA ESCORTS, INC., EMPIRE STATE
ESCORTS, INC., GOTHAM BUS CO. INC.,
GRANDPA'S BUS CO., INC., HOYT
TRANSPORTATION CORP., IC ESCORTS INC.,
KINGS MATRON CORP., LOGAN
TRANSPORTATION SYSTEMS, INC., LONERO
TRANSIT INC., LORISSA BUS SERVICE INC.,
MOUNTAINSIDE TRANSPORTATION CO., INC.,
PIONEER SCHOOL BUS RENTAL, INC.,
PIONEER TRANSPORTATION CORP., RAINBOW
TRANSIT INC., AMBOY BUS CO., INC.,
RELIANT TRANSPORTATION, INC.,
RPM SYSTEMS INC., SCHOOL DAYS INC.
and TUFARO TRANSIT CO. INC.,

                Respondents.
----------------------------------X
```
**MATSUMOTO, United States District Judge:**

On July 3, 2013, Petitioner James G. Paulsen, Regional Director of Region 29 of the National Labor Relations Board ("NLRB"), acting for and on behalf of the NLRB, filed a motion seeking a preliminary injunction under section 10(j), 29 U.S.C.

§ 160(j), of the National Labor Relations Act (the "Act"), 29 U.S.C. §§ 151-169, against respondents, companies that contract with the New York City Department of Education ("DOE") to provide school bus transportation services. On August 28, 2013 this court granted petitioner's motion for a preliminary injunction (i) ordering respondents to bargain in good faith, and (ii) ordering rescission of the unilateral changes imposed by respondents when they implemented their best and final Offer on March 22, 2013. (ECF No. 63, Order Granting Preliminary Injunction ("Preliminary Injunction Order"), 8/28/13.)

Respondents filed a notice of appeal of this court's order on August 29, 2013, (ECF No. 64, Notice of Appeal, 8/29/13), and subsequently moved to stay the Preliminary Injunction Order, (ECF No. 65, Motion to Stay Preliminary Injunction ("Mot."), 9/4/13). The court issued an order to show cause as to why respondents' motion should not be granted on September 4, 2013, and the motion was fully briefed on September 11, 2013. The parties submitted additional letters to the court between September 16 and September 27, 2013. (ECF Nos. 71-76.) For the reasons provided below, respondents' motion to stay the preliminary injunction is denied.

**BACKGROUND**

The relevant facts of this case are set forth in detail in the court's Preliminary Injunction Order and will only

be summarized briefly here. The respondents in this case are 28 companies that contract with DOE to provide school bus transportation for general and special education students. After twelve negotiation sessions with Local 1181-1061, Amalgamated Transit Union, AFL-CIO ("Local 1181"), five of which followed the termination of a strike by Local 1181, respondents declared an impasse because the union would not agree to include a Most Favored Nations ("MFN") clause in the collective bargaining agreement ("CBA") during the negotiations sessions. Under the MFN clause, if Local 1181 granted an employer certain specified economic terms more favorable than the equivalent terms in its CBAs with respondents, then any respondent could adopt those more favorable terms in its CBA with Local 1181. (Preliminary Injunction Order at 4-12.)

After a thorough review of the parties' arguments, and the exhibits and transcript of the testimony ("Tr.") presented at a NLRB hearing before Administrative Law Judge Raymond P. Green,[1] this court found that (i) petitioner had the legal authority to file the consolidated complaint against respondents and the petition for section 10(j) relief, (ii) there was reasonable cause to believe that respondents had

---

[1] On September 20, 2013, Judge Green issued his decision, in which he found respondents had violated the Act, and that they should cease and desist their unlawful actions, rescind their unilateral changes, and make whole employees affected by unfair labor practices. *All Am. Sch. Bus Corp.*, 2013 NLRB LEXIS 632 (N.L.R.B. Sept. 20, 2013).

3

committed an unfair labor practice, (iii) injunctive relief was just and proper, and (iv) the public interest and the balance of the equities were served in this case by granting the relief sought by petitioner.

## DISCUSSION

### A. Legal Standard

To obtain a stay of an order pending an appeal, a party must (1) make "a strong showing that [it] is likely to succeed on the merits" of its appeal, (2) show irreparable injury in the absence of a stay, (3) show that other parties interested in the proceeding will not be substantially harmed if the stay is granted, and (4) show that the stay is in the public interest. *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The Second Circuit has explained that "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors." *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (quoting *Washington Metro. Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)). A stay may be granted pending appeal "where the likelihood of success is not high but the balance of hardships favors the applicant." *Id.* Thus, "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury

4

plaintiff[] will suffer absent the stay. Simply stated, more of one excuses less of the other." *Id.* (quoting *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)) (citation omitted) (alteration in original).

The Second Circuit on appeal is "bound by the factual findings of the district court unless these are clearly erroneous, but may fully review its conclusions of law, including findings of reasonable cause. The district court's exercise of discretion in deciding whether injunctive relief is just and proper will be upheld unless it has been abused." *Kaynard v. Mego Corp.*, 633 F.2d 1026, 1030 (2d Cir. 1980); *see also Hoffman v. Inn Credible Caterers, Ltd.*, 247 F.3d 360, 364 (2d Cir. 2001) (same).

Additionally, it is well settled that courts "avoid reaching constitutional questions when they are unnecessary to the disposition of a case." *Anobile v. Pelligrino*, 303 F.3d 107, 123 (2d Cir. 2002); *see also Hutchinson v. Proxmire*, 443 U.S. 111, 122 (1979) ("Our practice is to avoid reaching constitutional questions if a dispositive nonconstitutional ground is available."); *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also

5

present some other ground upon which the case may be disposed of.") (Brandeis, J., concurring).

### B. Application

Respondents make three arguments in support of their motion to stay. First, respondents argue that the acting general counsel did not have the legal authority to file the section 10(j) petition and that the consolidated complaint was not validly issued. Second, respondents argue that the court's order "explicitly turns on what allegedly took place during the 2009 negotiations," which was improper and constitutes clear error. Third, respondents argue that the balancing of equities also supports a stay because they will suffer irreparable injury, there is no corresponding irreparable harm to Local 1181, and that the public interest is served by granting a stay. (Mot.) Each of these arguments will be discussed below.

#### 1. Authority to File Consolidated Complaint and Section 10(j) Petition

Respondents argue that this court improperly relied on Judge Cogan's opinion in *Paulsen v. Renaissance Equity Holdings, LLC*, 849 F. Supp. 2d 335 (E.D.N.Y. 2012), because it was decided before three appellate court cases in other jurisdictions that they claim undermine its reasoning. Respondents fail to understand both this court's opinion and Judge Cogan's decision in *Renaissance Equity Holdings*.

In *Renaissance Equity Holdings*, Judge Cogan held that Congress intended to permit the NLRB to delegate its section 10(j) powers to the General Counsel based on the legislative history of the Taft-Hartley Act, that the NLRB lawfully delegated its section 10(j) powers, and that because "Congress created the post of General Counsel to ensure that certain prosecutorial functions operate without regard to the [NLRB][,] [t]he General Counsel's validly-delegated power to initiate § 10(j) petitions therefore does not vanish when the [NLRB] loses its quorum." *Id.* at 345, 350. Under Judge Cogan's reasoning, the General Counsel has the authority to bring a section 10(j) petition regardless of whether President Obama's recess appointments to the NLRB are valid, and it is thus inappropriate and unnecessary to address the constitutional question of whether those appointments are, in fact, valid. *Id.* at 350-52.

Respondents argue that the court's reliance on Judge Cogan's decision is misplaced because of the D.C. Circuit's decision in *Noel Canning v. NLRB*, 705 F.3d 490 (D.C. Cir. 2013), the Third Circuit's decision in *NLRB v. New Vista Nursing & Rehabilitation, LLC*, 719 F.3d 203 (3d Cir. 2013), and the Fourth Circuit's decision in *NLRB v. Enterprise Leasing Co. Southeast, LLC*, 722 F.3d 609 (4th Cir. 2013). These three circuit courts held that certain of President Obama's appointments to the NLRB were invalid because they occurred during *intrasession* breaks of

7

the Senate, not *inter*session breaks. Relying on these decisions, respondents argue that the NLRB "was without a constitutional quorum on November 9, 2011 when it purported to delegate Section 10(j) authority to the Acting General Counsel" and that petitioner was invalidly appointed by an NLRB without a constitutional quorum and thus could issue a valid consolidated complaint. (Mot. at 4-8.)

Respondents fail, however, to account for a 2001 delegation by the NLRB to the general counsel to initiate section 10(j) proceedings and a 2002 delegation that affirmed the 2001 delegation. On December 14, 2001, the NLRB "delegate[d] to the General Counsel full and final authority and responsibility on behalf of the Board to initiate and prosecute injunction proceedings under section 10(j)," and further provided that this delegation "shall be effective during any time at which the Board has fewer than three Members." *Order Delegating Authority to the General Counsel Before Chairman Peter J. Hurtgen, and Members Wilma B. Liebman and Dennis P. Walsh*, 66 Fed. Reg. 65,998-65,999 (Dec. 21, 2001). In 2002, the NLRB issued an order affirming that "[a]ll existing delegations of authority to the General Counsel and to staff in effect prior to the date of this order remain in full force and effect, *including the December 14, 2001, delegation* regarding court litigation authority." *Order Delegating Authority to the*

*General Counsel; Before Members Wilma B. Liebman, William B. Cowen, and Michael J. Bartlett*, 67 Fed. Reg. 70,628 (Nov. 25, 2002) (emphasis added). On November 9, 2011, the NLRB again "delegate[d] to the General Counsel full authority on all court litigation matters that would otherwise require Board authorization" and expressly "consolidate[d], restate[d] and affirm[ed]" the 2001 and 2002 delegations of authority. *Order Contingently Delegating Authority to the General Counsel*, 76 Fed. Reg. 69,768-69,769 (Nov. 9, 2011).

Respondents' constitutional argument concerning the validity of President Obama's recess appointments is only relevant if they can show that the 2001 delegation, the 2002 delegation and affirmation of the 2001 delegation, and the 2011 delegation and affirmation of the 2001 and 2002 delegations are all invalid. Respondents do not, because they cannot, make any such showing because "neither the 2001 nor the 2002 Delegation Order indicates that the reconstitution of a quorum permanently terminates the delegation[,] [and] [t]he 2001 order . . . states that the delegation 'shall be effective during any time at which the Board has fewer than three Members.'" *Overstreet v. SFTC, LLC*, No. 13-CV-0165, 2013 WL 1909154, at *4 (D.N.M. May 9, 2013) (quoting *Order Delegating Authority to the General Counsel*, 66 Fed. Reg. at 65,998). Therefore, the decisions of the D.C. Circuit, Third Circuit, and Fourth Circuit do not change this

9

court's reliance on the analysis in Judge Cogan's opinion in *Renaissance Equity Holdings* because, even if President Obama's appointments were invalid, it does not change the fact that the NLRB validly delegated authority to the general counsel pursuant to both the 2001 delegation and the 2002 delegation and affirmation of the 2001 delegation.

Moreover, after briefing in this case concluded, the Second Circuit decided *Kreisberg v. Healthbridge Management, LLC*, in which it rejected many of the same arguments made by respondents in this case. No. 12-4890-cv, 2013 U.S. App. LEXIS 20837 (2d Cir. Oct. 15, 2013). In *Kreisberg*, the Second Circuit held that (i) the Act permitted "a properly constituted [NLRB] to delegate its § 10(j) power and enable the General Counsel to prosecute . . . violations [of the Act] before a federal district court," (ii) "the delegation of § 10(j) authority to the General Counsel . . . survives even when the [NLRB] subsequently lacks a quorum," and (iii) "the earlier 2001 and 2002 Delegations were effective in August 2012 without regard to the 2011 Delegation." *Kreisberg*, 2013 U.S. App. LEXIS 20837 at *19-20, 23. Accordingly, the Second Circuit found that the general counsel had the authority to file a section 10(j) petition regardless of whether President Obama's appointments to the NLRB were valid or the 2011 delegation was valid. *Id.* at *23.

Respondents also argue that the Regional Director of Region 29 of the NLRB did not have the authority to issue the underlying consolidated complaint because he was invalidly appointed without a required quorum of the NLRB. (Mot. at 6-8.) This argument fails because the Act grants "final authority" to issue complaints to the General Counsel. 29 U.S.C. § 153(d); *NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 127-28 (1987). Also, the NLRB's acting general counsel has ratified the issuance of the consolidated complaint, curing any defect in its issuance. (ECF No. 26-5, Letter from Lafe E. Solomon to Peter Kirsanow, 7/12/13, at 3 (stating that "although Regional Director Paulsen has at all relevant times held the authority to issue the challenged complaint on my behalf, I also now expressly ratify the issuance of the complaint."))

Finally, because this court should "avoid reaching constitutional questions when they are unnecessary to the disposition of a case," the court does not address the constitutionality of President Obama's recess appointments to the NLRB because both the section 10(j) petition and the consolidated complaint were legitimately issued regardless of the constitutionality of those appointments. *Anobile*, 303 F.3d at 123.

### 2. The 2009 Negotiations

Respondents also argue that the court committed clear error because the preliminary injunction order "explicitly turns" on what took place during the 2009 negotiations. (Mot. at 8-11.) This argument incorrectly characterizes this court's Preliminary Injunction Order and Judge Green's comments during the ALJ hearing.

First, the Preliminary Injunction Order by no means "explicitly turn[ed]" on the 2009 negotiations. To the contrary, the court considered, *inter alia*, the entire evidentiary record of the instant 2012-2013 negotiations, the progress during those negotiations on important economic issues other than the CBA, the fact that Local 1181 was willing to agree to an extension of the 2009 CBA with the MFN clause, and the relatively small amount of time devoted to discussing the MFN clause throughout the 2012-2013 negotiations. (Preliminary Injunction Order at 22-27.) Second, respondents *never sought* an evidentiary hearing before this court to present evidence they now argue was unfairly excluded by Judge Green. Third, this court properly considered evidence that Judge Green admitted in the ALJ hearing as well as bargaining notes and other evidence that respondents submitted to the court. It should also be noted that Judge Green did *not* "ma[ke] it clear that he was only

concerned with what occurred during the 2012-2013 negotiations." (Mot. at 9.) Instead, Judge Green considered the fact that the 2009 CBA included a MFN clause, even if he was not concerned with the specifics of how the clause was negotiated for that CBA. (Tr. at 309-313.) In any event, to the extent that there is a factual dispute about what happened during the negotiations of the 2009 CBA, this court is required to defer to petitioner's view of the facts. *E.g.*, *Silverman v. Major League Baseball Player Relations Comm., Inc.*, 67 F.3d 1054, 1059 (2d Cir. 1995) ("Appropriate deference must be shown to the judgment of the NLRB, and a district court should decline to grant relief only if convinced that the NLRB's legal or factual theories are fatally flawed.")

Thus, respondents' argument that the court improperly considered evidence related to the MFN clause in the 2009 CBA is without merit.

### 3. Irreparable Injury and Balance of the Equities

Finally, respondents argue that the balance of the equities favors their case and that they are suffering irreparable injury as a result of the court's Preliminary Injunction Order. (Mot. at 12-15.) First, respondents claim that the court's preliminary injunction is "akin to a death sentence for many, if not all" of the respondent companies.

13

(*Id.* at 12.)  Yet respondents have consistently failed to proffer a factual basis for this dramatic assertion such as audits or financial records that would show "many, if not all" of the respondents are losing large amounts of money, let alone on the brink of extinction.  (*Id.*)  Indeed, respondents have only permitted Local 1181 to review the financial records of a small number of companies, one of which was showing a profit.  (Tr. at 153-154.)[2]

Respondents' remaining arguments are also without merit.  As discussed in the Preliminary Injunction Order, the evidence in the record establishes that respondents' unilateral implementation of the best and final offer imposes significant *ongoing* financial and emotional hardships on Local 1181 members that money damages paid after a final decision will not adequately remedy, irreparably harms the union's position in the workplace and at the bargaining table, and damages the collective bargaining process.  (Preliminary Injunction Order at 28-33.)  "Without a restoration of the status quo, any future bargaining would occur in the shadow of work conditions unilaterally determined and imposed by [respondents]." *Kreisberg*, 2013 U.S. App. LEXIS 20837 at *30.  Respondents have

---

[2] Respondents also claim that the public interest will be served because they have a provision in their contracts with DOE that requires the DOE to pay costs associated with employing escorts.  (Mot. at 15.)  Given that this court has found respondents have failed to show a likelihood of success on the merits of their appeal, it also finds that this argument fails.

14

not presented any new evidence or persuasive arguments that warrant granting a stay.

## CONCLUSION

For the foregoing reasons, the court finds that respondents have failed to show a likelihood of success on the merits of their appeal, irreparable injury in the absence of a stay, a lack of substantial harm to other parties interested in the proceeding if the stay is granted, or that the balance of the equities and the public interest favor a stay.  Accordingly, respondents' motion to stay the Preliminary Injunction Order is denied.

**SO ORDERED.**

_____/s/_____

KIYO A. MATSUMOTO
United States District Judge

Dated:  Brooklyn, New York
        October 23, 2013